# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JAKIE POLLARD                 :

                                :

                                :

        v.                         :          Civil No. CCB-13-3220

                                :

                                :

BALTIMORE COUNTY       :

BOARD OF EDUCATION, *et al.*    :

## MEMORANDUM

Plaintiff Jakie Pollard filed this action against the State of Maryland, the "Department of Education of Baltimore County,"[1] and four individual defendants who worked in the Baltimore County Public Schools ("BCPS"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the Americans with Disabilities Act ("ADA"). Presently, the Baltimore County Board of Education ("Board") is the only remaining defendant.[2] The Board has moved for summary judgment. For the reasons stated below, the Board's motion will be granted.[3]

## BACKGROUND

The present dispute arises out of Jakie Pollard's employment as a teacher in Baltimore County Public Schools. Pollard, an African American female, claims the Board discriminated against her on the basis of race, age, and disability and forced her into retirement. A summary of the allegations and the evidence proffered by the parties follows.

---

[1] The Baltimore County Board of Education—whom the parties agree Pollard had intended to name in her complaint—noted previously that a "Department of Education of Baltimore County" does not exist.

[2] The individual defendants were dismissed by agreement on February 11, 2014.

[3] The parties' other pending motions will be denied, including Pollard's motion to expand discovery. The court recognizes the Board's frustration with Pollard's behavior during discovery. Not only did Pollard fail to respond in a timely manner to the Board's interrogatories and requests for documents, but she then dumped almost 400 pages of answers and documents on the Board shortly before the day on which the Board had planned to depose Pollard. Additionally, nearly a month after the discovery deadline had passed, Pollard filed a motion to expand discovery by 60 days without providing any reason as to why she needed more time and, more importantly, why she had not engaged in discovery during the period established by the court in its scheduling order.

Pollard began working for the Board as a fourth grade teacher at Edmondson Heights Elementary School ("Edmondson Heights") on August 23, 1999.  She continued to teach fourth grade at Edmondson Heights until November 11, 2011, on which date she took sick leave, allegedly due to the Board's discriminatory actions.  (Def.'s Mot. Summ. J. Ex. 1, Answer to First Req. for Admis. ("Admis.") No. 17, ECF No. 21-3.)  Pollard does not appear to object to her treatment during the early part of her tenure.[4]  Instead, she claims that, near the end of her tenure, Principal Yasmin Stokes and other Board agents constructively terminated her.  In Pollard's view, Stokes and others "acted to degrade [her] as a teacher, treat [her] differently from other white, younger and healthier employees who were similarly situated . . . ."  (Pl.'s Opp'n Ex. 1, Pollard Aff. 1, ECF No. 23-1.)  They told her she was old and intentionally sought to harass her until she, "an older African American," quit her job.  (Id. at 1.)  According to her, the superintendent assigned to supervise Edmondson Heights, Karen Blannard, instructed Stokes to terminate Pollard.  (Id. at 2.)  All of these acts were "part of the discrimination which is systematic in the Baltimore County School Board who are predominately white, middle class and devoid of empathy . . . ."  (Id.)

Pollard also apparently had a variety of health issues that the Board allegedly would not accommodate.  In her last three years of teaching, she had developed a "bad hip problem," which she claims had been diagnosed as avascular necrosis.  (Def.'s Reply Ex. 1, Pollard Dep. 62, ECF No. 26-1.)  Pollard admits, however, that she did not receive that diagnosis until after she had retired.  (Id. at 75.)  She also admits that, when Principal Stokes once asked her what was wrong, Pollard responded only that she "had a bad hip," without elaborating further.  (Id. at 102.)  In addition to her hip problem, Pollard appears to have had arthritis in her right shoulder, (id. at 76),

---

[4] It is hard to know this for sure, because Pollard does not mention any dates for any of the acts and events stated in her affidavit.  And her three-page affidavit is the only material she submits to the court with her opposition.

which Pollard says arose after she slipped on applesauce in the Edmondson Heights hallway early in her career, (*id.* at 62).  Throughout her tenure, however, Pollard never asked any of her supervisors for any kind of accommodation for her physical conditions.  (*Id.* at 103, 119-120.)

The following took place after Pollard went on leave.  In January 2012 BCPS sent Pollard an email requesting she complete a form that asked whether she planned to return to the classroom for the 2012-2013 school year.  Pollard indicated she would return to Edmondson Heights that fall.  (Admis. Nos. 44, 45.)  On February 16, 2012, a nurse case manager from the Board's Office of Risk Management, acting under standard procedure, attempted to schedule an independent medical evaluation ("IME") of Pollard's condition for March 6, 2012.[5]  (Def.'s Mot. Summ. J. Ex. 7, Segall Aff. ¶ 4, ECF No. 21-8.)  She did not attend that IME.  And because Pollard had not done so by the end of the school year, the Board sent follow-up notices seeking to verify Pollard's work status, (*Id.* at ¶¶ 5, 6), to which Pollard responded, "I intend to return whenever my doctor releases me.  Leave me alone." (*Id.* at Ex. 1.)  On July 20, 2012, however, Pollard submitted an application for retirement to the Board's Office of Retirement & Employee Benefits, which initiated her retirement process.  (Def.'s Mot. Summ. J. Ex. 5, Haskins Aff. ¶¶ 4, 10, ECF No. 21-6.)  The Board processed Pollard's application and let her choose an effective date for her retirement.  (*Id.* at ¶¶ 3, 8.)  Pollard opted to retire effective July 1, 2012.  (*Id.* at ¶ 9.)  By this point, Pollard had received all of the pay to which she had been entitled.  (Def.'s Mot. Summ. J. Ex. 6, Metzger Aff. ¶ 7, ECF No. 21-7.)  And, since retirement, Pollard has received all pay and benefits to which she, as a BCPS retiree, is entitled.  (Admis. No. 29.)

Pollard filed this action on October 30, 2013, alleging discrimination on the basis of race, age, and disability.  The Board moved for summary judgment on July 15, 2014.

---

[5] Although the nurse case manager scheduled the IME, Assistant Superintendent Karen Blannard signed the letter sent to Pollard.  (Segall Aff. ¶ 4.)

## ANALYSIS

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (emphasis added).  Whether a fact is material depends upon the substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Id.*  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor.  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation omitted); *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013) (citation omitted).  At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and quotation marks omitted).

### I.  Title VII and ADEA Claims

Pollard's opposition includes no memorandum of law and provides no argument other than the conclusory assertions that "[t]here are disputes of material fact[,]" and that "[a] prima Facie case has been shown as set forth above and in her attached affidavit to establish that she has suffered an adverse employment action at the hands of the defendant."[6]  (Pl.'s Opp'n 1, ECF

---

[6] If Pollard believes a prima facie case can be proven through a conclusory affidavit, she is wrong.  *See Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) (concluding that district court properly disregarded affidavit that

4

No. 23.)  The Board's argument is that Pollard has not, in fact, shown she was subject to any sort of adverse employment action and that, accordingly, she cannot prove a prima facie case under either Title VII or the ADEA.  The court agrees with the Board.

To establish her prima facie case under either Title VII or the ADEA, Pollard must show that the Board took some form of adverse employment action against her.  *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) ("Regardless of the route a plaintiff follows in proving a Title VII action, the existence of some adverse employment action is required." (citation omitted)); *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) ("To demonstrate the prima facie case of . . . [ADEA] age discrimination . . . , the plaintiff must show that . . . she suffered adverse employment action[.]" (citation omitted)).  An adverse employment action is one that "adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment."  *James*, 368 F.3d at 375 (alteration in original) (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001)) (internal quotation marks omitted).  The "typical" examples are "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion . . . ."  *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999).  A reassignment is also sufficient if the plaintiff can show that the reassignment had "some significant detrimental effect on her."  *Id.* at 256.

Here, the Board has presented evidence that it took no adverse employment action and that, in fact, Pollard resigned voluntarily.  Supporting the fact that the Board took no adverse employment action against Pollard, the Board presents evidence that neither it nor any of its

---

did "not set forth facts of which the plaintiff ha[d] personal knowledge and . . . [did] not give specific facts, but only generalities").  Moreover, to the extent Pollard expects the court to divine, on its own, which material facts are in dispute and which "particular parts of the material in the record" support those material facts, Fed. R. Civ. P. 56(c)(1)(A), she is also wrong.  *See, e.g.*, *Nw. Nat. Ins. Co. v. Baltes*, 15 F.3d 660, 662-63 (7th Cir. 1994) ("District judges are not archaeologists.  They need not excavate masses of papers in search of revealing tidbits—not only because the rules of procedure place the burden on the litigants, but also because their time is scarce.").

agents decreased Pollard's pay or benefits, gave her a less-than-satisfactory evaluation,

reassigned her position,[7] or disciplined her.  (Metzger Aff. ¶ 7; Stokes Aff. ¶ 10.)  The Board

presents evidence showing that, actually, Pollard took leave on November 12, 2011, never

returned to the school, and ultimately submitted an application for retirement on July 20, 2012.

(Req. for Admiss. Nos. 17, 18, 21-26; Haskins Aff. ¶¶ 4, 10.)  In other words, Pollard had been

on leave for over eight months before she submitted her application for retirement.  And during

this time, she had had "few if any conversations or communications" with Principal Stokes.

(Stokes Aff. ¶ 7.)  Taken together, the inference is that Pollard resigned voluntarily.

And Pollard has failed to raise a genuine dispute as to the absence of an adverse

employment action.  The only material Pollard submits in opposition is her three-page affidavit,

which does not dispute the Board's evidence that shows the Board never actually discharged

Pollard.  Pollard instead asserts she was "constructively terminated" from her job.  (Pl.'s Opp'n

Ex. 1, Pollard Aff. 1, ECF No. 23-1.)  But she does not sufficiently support a cognizable claim

under that theory.  "An employee is considered constructively discharged 'if an employer

deliberately makes the working conditions intolerable in an effort to induce the employee to

quit.'"  *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 425 (4th Cir. 2014) (quoting *Honor v. Booz-*

*Allen & Hamilton, Inc.*, 383 F.3d 180, 186-87 (4th Cir. 2004)).  Thus, to show constructive

discharge here, Pollard must prove two elements: "(1) the deliberateness of [the Board]'s actions,

motivated by racial [or ageist] bias, and (2) the objective intolerability of the working

conditions."  *Honor*, 383 F.3d at 187 (citations omitted).  Demotion can be enough to constitute

---

[7] The Board admits that Principal Stokes had, upon being assigned to lead Edmondson Heights, tried to reassign Pollard from teaching fourth grade to teaching second grade.  But the Board presents evidence showing this reassignment was one sought in the normal course of improving the school's performance.  (Def.'s Mot. Summ. J. Ex. 8, Stokes Aff. ¶ 4, ECF No. 21-9.)  Even if the reassignment had been completed, it would not have constituted an adverse employment action because "absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." *Boone*, 178 F.3d at 256-57.  Pollard's pay and benefits would not have changed.  (Stokes Aff. ¶ 4.)

constructive discharge, "especially where the demotion is essentially a career-ending action or a harbinger of dismissal." *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994) (citation omitted). But "mere '[d]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions'" is not. *James*, 368 F.3d at 378 (alteration in original) (quoting *Carter*, 33 F.3d at 459).

Pollard has not shown constructive discharge. Pollard did not present evidence creating a genuine dispute as to whether the Board "deliberately attempted to induce her to quit" or "that her working conditions at the time she resigned were objectively intolerable." *Freeman*, 750 F.3d at 425. At best, the record reflects that Pollard was the subject of professional criticism from her supervisors. For example, Assistant Superintendent Blannard states in her affidavit that she once observed a portion of Pollard's class, discussed with Pollard her "concerns based on [her] observations," and made myriad suggestions to Pollard, all of which, "[u]nfortunately[,] Ms. Pollard was not receptive to . . . ." (Def.'s Mot. Summ. J. Ex. 4, Blannard Aff. ¶ 7, ECF No. 21-5.) And Pollard offers no admissible evidence indicating otherwise.[8] Under the Fourth Circuit's standard, such feedback and criticism do not constitute working conditions "so intolerable as to compel a reasonable person to resign." *Honor*, 383 F.3d at 187 (quoting *Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (internal quotation mark omitted)); *see also Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985) ("Every job has its frustrations, challenges and disappointments; these inhere in the nature of work."). As to intentions, there is no indication in the record that the Board or any of its agents ever intended to

---

[8] Pollard's affidavit does state "[she] was constructively terminated . . . as I have set forth in my Complaint, Answers to Interrogatories and Deposition (still pending)." (Pollard Aff. 1.) But Pollard "fail[s] to indicate where corresponding evidence in the record might be found." *Jurgensen v. Albin Marine, Inc.*, 214 F. Supp. 2d 504, 510 (D. Md. 2002). And the court "is not required to scour the record looking for factual disputes" on Pollard's behalf. *Smith v. Vilsack*, 832 F. Supp. 2d 573, 580 (D. Md. 2011) (citation omitted). Pollard also states that the "actions by the defendant were more than dissatisfaction or unpleasant working condition," (Pollard Aff. 3), and that she was "forced to take off work," "forced to take sick leave which was lost," and "had to resign in order to survive," (*id.* at 1, 2). But these statements are conclusory and lack specificity and therefore will not be considered.

induce Pollard to quit.  Rather, Principal Stokes sought to reassign Pollard from fourth to second grade for strategic, rather than discriminatory, reasons.  (Stokes Aff. ¶ 4.)  Because the Board has shown no genuine dispute exists as to whether the Board initiated an adverse employment action against Pollard, and because proof of this is essential to Pollard's prima facie case, the Board is entitled to judgment as a matter of law on Pollard's Title VII and ADEA claims.

## II.  ADA Failure to Accommodate Claim

Pollard's opposition makes no specific argument regarding the ADA claim other than that "[t]here are disputes of material fact."  (Pl.'s Opp'n 1.)  Even assuming, without deciding, that Pollard could bring a claim for failure to accommodate without showing any adverse employment action, the court agrees with the Board that Pollard has not shown she requested an accommodation for her alleged disabilities.

The ADA makes it illegal for an employer to "discriminate against a qualified individual on the basis of disability . . . ."  42 U.S.C. § 12112(a).  One form of discrimination, which is what Pollard alleges here, is the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . ."  *Id.* § 12112(b)(5)(A).  To establish a prima facie case for failure to accommodate, a plaintiff must show: "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations."  *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (alteration in original) (quoting *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 387 n.11 (4th

Cir. 2001)).  Because Pollard has failed to show the second element—that the Board had notice

of her disability—the Board is entitled to judgment as a matter of law on this claim.[9]

      To trigger an employer's duty to accommodate, an employee must first "communicate[]

to his employer his disability and his desire for an accommodation for that disability."  *Wilson*,

717 F.3d at 346-47 (citations omitted); *see also* 29 C.F.R. app. § 1630.9 ("In general . . . , it is

the responsibility of the individual with a disability to inform the employer that an

accommodation is needed.").  Though the burden is "not a great one," and does not require the

use of magic phrases, an employee must provide such adequate notice.  *Rock v. McHugh*, 819 F.

Supp. 2d 456, 473 (D. Md. 2011) (quoting *EEOC v. Fed. Express Corp.*, 513 F.3d 360, 369 n.5

(4th Cir. 2008)).  An employer simply cannot be expected to accommodate disabilities of which

it is unaware.  *See Adamczyk v. Chief, Baltimore Cnty. Police Dep't*, 952 F. Supp. 259, 264 (D.

Md. 1997) ("[A]n employee cannot succeed on a claim of [ADA] discrimination . . . when the

employer was not even aware of the employee's disability."); 29 C.F.R. app. § 1630.9 ("[A]n

employer would not be expected to accommodate disabilities of which it is unaware. . . .").  And

"vague or conclusory statements revealing an unspecified incapacity are not sufficient" to satisfy

this burden.  *Rock*, 819 F. Supp. 2d at 473 (quoting *Huppenbauer v. May Dep't Stores Co.*, 99

F.3d 1130, 1996 WL 607087, at *6 (4th Cir. Oct. 23, 1996) (unpublished)).

      Here, there is no genuine dispute that Pollard did not request an accommodation for her

alleged disabilities.  The Board elicited deposition testimony from Pollard in which she admits

she never asked anyone in a position of authority to provide her with accommodations for any of

---

[9] The Board also appears to argue that Pollard has failed to show she had a disability within the meaning of the ADA.  (*See* Def.'s Reply 5, ECF No. 26 ("Ms. Pollard also has no evidence to suggest that she is disabled[.]").) Pollard's evidence on this issue is tenuous.  Nevertheless, because Pollard cannot show she requested an accommodation, the court need not decide whether she had a cognizable disability.

her physical conditions.[10]  Pollard specifically concedes she never asked her former principal or

former assistant principal for any type of accommodation.  (Pollard Dep. 119, 120.)  Nor did she

ask her principal or assistant principal at the time of the alleged discrimination.  (*Id.* at 103.)  She

also never requested a handicap parking spot or a classroom assignment that would reduce the

amount of walking she needed to do.  (*Id.* at 120, 121.)  Pollard does, however, state she once

asked her team leader "for help hanging things in [her] [class]room."  (*Id.* at 121.)  But there is

no evidence in the record suggesting her team leader was in any position of authority within

BCPS such that Pollard's request adequately notified the Board.  And even if the team leader had

such authority, a simple request for help hanging things in one's classroom does not sufficiently

"communicate[] to [the Board] h[er] disability and h[er] desire for an accommodation for that

disability."  *Wilson*, 717 F.3d at 346-47.

        In opposing the Board's motion, Pollard has not presented evidence creating a genuine

dispute as to her failure to request an accommodation.  As an initial matter, the only material

Pollard submits with her opposition is her own three-page affidavit.  And the only statement her

affidavit makes regarding her alleged request is that the Board "was put on notice that an

accommodation was needed . . . ."  (Pollard Aff. 3.)  Pollard does not provide any details

showing when the Board was put on notice, whom she spoke to, or what she actually

communicated.  Such a conclusory statement is insufficient to avert summary judgment.

        While Pollard does "incorporate[] her Complaint, Discovery Answers and sworn

deposition" into her opposition, (Pl.'s Opp'n 1), none of this material creates a genuine dispute

as to whether she requested an accommodation.  On a motion for summary judgment, the court

---

[10] When asked, "Did you ever request an accommodation for any physical condition that you had from anyone in the
school system," Pollard said, "I asked for help sometimes."  When the Board's counsel clarified, "Help is different
than an accommodation," Pollard said, "Well, I'll say I accommodated myself.  So, no."  (Pollard Dep. 120.)

does not accept as true facts alleged in a complaint.[11]  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (noting that Rule 56 "permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except the mere pleadings themselves*" (emphasis added)).  Pollard did not submit to the court any "Discovery Answers" and it is certainly not the court's job to gather these for her.  *See* Fed. R. Civ. Pro. 56(c).  And, as already noted, Pollard's deposition testimony confirms, if anything, the absence of a genuine dispute.  In short, Pollard has failed to raise a genuine dispute as to the second element of her prima facie failure to accommodate claim.  Accordingly, the Board is entitled to judgment as a matter of law on Pollard's ADA claim.

## CONCLUSION

For the reasons stated above, the Board's motion for summary judgment will be granted. A separate Order follows.


November 4, 2014                                          /S/
        Date                              Catherine C. Blake
                                          United States District Judge


---

[11] Even if the court were to consider the factual allegations in her complaint as true, all Pollard states on this issue is that "Defendant had notice of this condition and refused to give her a reasonable accommodation although she requested same" and that the Board had "full knowledge about [it] at all relevant times."  (Compl. ¶ 26, 28.)